UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ] | |
| --- | --- | --- |
| | ] | No.   16-CR-10124-WGY |
| v. | ] | |
| | ] | |
| CARLOS RAFAEL and | ] | |
| ANTONIO FREITAS | ] | |

**GOVERNMENT'S OMNIBUS RESPONSE
TO DEFENDANTS' MOTIONS TO SEVER**

The government hereby responds to both defendants' motions to sever defendants for trial (docket nos. 63 and 64).  As discussed further below, the government ultimately does not oppose severance.

**Introduction**

In May 2015, the Internal Revenue Service began a criminal investigation of Carlos Rafael, who owns one of the largest commercial fishing businesses in the United States.  Two undercover agents approached Rafael about buying his fishing business and, over time, Rafael told them how he systematically deceives federal authorities about what fish he has caught, sells bulk fish under the table, and smuggles the resulting cash to Portugal to avoid U.S. taxation.

The cash smuggling is where the co-defendant, Antonio Freitas, comes in.  On October 14, 2015, in a consensually recorded meeting at a restaurant, Rafael told the undercover agents that he takes cash through Logan International Airport with the help of a local sheriff's deputy who has airport privileges.  This part of the conversation was a bit fragmented, but Rafael essentially told the agents that the sheriff's deputy works with "immigration" and that Rafael helped the deputy get a promotion at the sheriff's department; Rafael appeared to misremember Freitas's rank and certain other details.  Rafael explained that he moved money to Portuguese banks to hide it from

U.S. taxation and discussed with the undercover agents whether they would want to do the same thing.[1]

Based on the recorded conversation, the case agents soon identified Rafael's likely co-conspirator as co-defendant Freitas, who at that time was one of two Bristol County Sheriff's Deputies who also worked as a Task Force Officer with the Department of Homeland Security (and so had airport security privileges). This surmise was later corroborated by surveillance and phone records.

On February 26, 2016, agents executed a search warrant at Carlos Rafael's office in New Bedford and arrested him and his bookkeeper on a criminal complaint charging them with conspiracy and violations of 18 U.S.C. § 1519. The investigation now overt, that same day the agents called Freitas, who agreed to be interviewed. During the interview, the agents played a portion of the UC recording from October 14, 2015, which made Freitas visibly upset. During this and later discussions with the agents, Freitas admitted to smuggling $17,500 in cash to Portugal for Rafael on February 5, 2016, telling the agents that Rafael asked him to transport the money and deposit it in Rafael's Santander account in that country. Freitas even gave the agents the Santander deposit slip, which bore Rafael's name as account holder and reflected the deposit amount. Freitas also confirmed that, at Freitas's behest, Rafael had called the Sheriff of Bristol County to suggest that he promote Freitas – an incident Rafael also described to the undercover agents during the recorded meeting in October 2015.

On May 4, 2016, a grand jury indicted Rafael on one count of conspiracy; 25 counts of false statements related to his fishing business; and, with Freitas, on one count of bulk cash

---

[1] The relevant excerpt from the transcript of the undercover recording (pages 30-37 of Volume I of the transcription pages 2-5 of Volume II) is attached at Tab A, with relevant portions highlighted. "MALE VOICE 3" and "MALE VOICE 4" are the undercover agents.

smuggling. Freitas was charged with one count of bulk cash smuggling and one count of structuring. *See* Dkt. Entry no. 22.

## Argument

Both defendants have filed motions for severance: Freitas because of what Rafael told the undercover agents about Freitas's involvement during the recorded meeting on October 14, 2015, and Rafael because of what Freitas told the case agents on February 26, 2016. Freitas's motion is legally incorrect, but the government concedes that Rafael's motion is meritorious.

I. **Severance is Justified Based on Freitas's Confession to Federal Agents, Which Expressly Implicated Rafael in Bulk Cash Smuggling**

It is well-established that, as a rule, "persons who are indicted together should be tried together." *United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993). "There is a preference in the federal system for joint trials of defendants who are indicted together" because joint trials promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations and citations omitted).

Rule 14 of the Federal Rules of Criminal Procedure, however, recognizes that in some instances a joint trial can prejudice one of the parties. Rule 14 does not require severance in a given instance; rather, it "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. 538-39. When defendants properly have been joined "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.*; *see also O'Bryant*, 998 F.2d at 25.

Since the Supreme Court's decision in *Bruton v. United States*, courts have recognized that a defendant's constitutional right to confrontation can be compromised by admitting a co-

3

defendant's confession that directly inculpates the defendant by name. *See* 391 U.S. 123, 137 (1968). To require severance, the co-defendant's statement must be "powerfully incriminating" and not curable by redaction and a limiting instruction. *See Richardson v. Marsh,* 481 U.S. 200, 208 (1987); *United States v. Lopez-Lopez*, 282 F.3d 1, 13 (1st Cir. 2002). "Powerfully incriminating" means, at a minimum, that the statement incriminates the defendant on its face, and not just when it is linked to other trial evidence. *See Richardson*, 481 U.S. at 208; *Brown v. Maloney*, 267 F.3d 36, 41 (1st Cir. 2001).

Here, as summarized above, over the course of two interviews and several calls, Freitas not only confessed to the agents about his own role in bulk cash smuggling but expressly implicated Rafael as his co-conspirator and the source of the funds. Because he was talking to people he knew were federal agents actively investigating a crime, Freitas's statements would undoubtedly be considered testimonial for purposes of the Confrontation Clause and fall squarely within *Bruton*. *See, e.g. Bruton*, 391 U.S. at 135; *Davis v. Washington*, 547 U.S. 813, 823-27 (2006) (discussing, in wake of *Crawford v. Washington*, when statements to police should be considered testimonial).

The government intends to introduce Freitas's admissions against Freitas at trial and, beyond Freitas and Rafael, there are no other defendants tied to this conduct. *See, e.g., United States v. Vega-Molina*, 407 F.3d 511, 520 (1st Cir. 2005) (noting, in dicta, that redaction of co-defendant's confession may not be sufficient to avoid *Bruton* problems in a case involving "so few defendants that the statement leaves little doubt" as to defendant's identity). Having re-reviewed Freitas's admissions and the surrounding evidence, the government concedes that it would be difficult to avoid infringing on Rafael's confrontation rights by "redacting" Freitas's admissions.

Consequently, the government does not oppose severance on the grounds stated in Rafael's motion.

Finally, as noted by both defendants' counsel, the bulk of the indictment concerns Rafael's long-term conspiracy to under-report the taking of certain species of fish by lying to federal authorities. The portion addressing Freitas helping Rafael to smuggle the proceeds to Portugal is smaller and, in factual terms, not difficult to separate from the rest of the case. *See Def. (Rafael) Mtn*. at 4 (citing *United States v. Bellomo*, 954 F. Supp. 630, 650-51 (S.D.N.Y. 1997)).

## II. In Contrast, Freitas's Severance Motion is Meritless Because the Statements at Issue Were Nontestimonial

In contrast, however, Freitas's motion for severance is legally incorrect. Freitas argues that severance is required because, when explaining his business activities to the undercover agents, Rafael implicated Freitas, by name, in bulk cash smuggling.

Rafael's statements, however, were clearly "nontestimonial" and so, as the First Circuit and other courts have repeatedly held, they are not subject to *Bruton* analysis because they are not covered by the Confrontation Clause. For example, in *United States v. Figueroa-Cartagena,* the First Circuit rejected a *Bruton* challenge to a recorded jail call from a co-conspirator to his mother, which implicated another defendant, because the statements were nontestimonial:

> Applying these principles, we conclude that Neliza's confrontation argument is without merit. We considered the character of the phone conversation in the companion opinion, holding that the statements made by Alberto and his mother were not testimonial. *See Castro-Davis,* Nos. 08-2108, 08-2109, 2010 WL 2794360, 612 F.3d 53 (1st Cir. 2010). As a consequence, Neliza has no constitutional right to confront Alberto. Her claim under the Confrontation Clause, whether denominated a *Crawford* challenge or a *Bruton* challenge, must be rejected. [*United States v.*] *Johnson,* 581 F.3d [320], 326 [(6th Cir. 2009)].

612 F.3d 69, 85 (1st Cir. 2010); *see also, e.g.*, *United States v. Pike*, 292 Fed. App'x 108, 112 (2nd Cir. 2008) (non-testifying defendant's earlier admissions to another inmate, implicating co-defendant, found nontestimonial and so not subject to *Bruton*).[2]

Similarly, the corollary to Rafael's statements to the undercover agents being nontestimonial is that they are admissible against Freitas as co-conspirator statements and statements by Rafael against his own interests. *See* FRE 801(d)(2)(E), 803(b)(3). This is so even in light of the Supreme Court's decision in *Crawford*. *See Davis*, 547 U.S. 813, 823-27 (2006); *see also, e.g., United States v. De La Paz–Rentas,* 613 F.3d 18, 29 (1st Cir. 2010) (*Bruton* "does not bar the use of a co-conspirator statement made in furtherance of the conspiracy"). Courts have followed this precise reasoning in admitting consensual recordings of a non-testifying co-conspirator that implicate the trial defendant. *See, e.g., United States v. Johnson,* 581 F.3d 320, 324-27 (6th Cir. 2009) (because statements were nontestimonial, rejecting *Bruton* and *Crawford* arguments and affirming admission under FRE 804(b)(3) of consensual recording of one defendant that implicated co-defendant).[3]

---

[2] Whether an out-of-court statement is "testimonial" depends principally on whether it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford v. Washington*, 541 U.S. 36, 52 (2004); *United States v. Castro-Davis*, 612 F.3d 53, 64-66 (1st Cir. 2010) (discussing *Crawford*, finding recorded call from jail nontestimonial and so admissible against co-defendant); *United States v. Brito*, 427 F.3d 53, 58-63 (1st Cir. 2005) (finding anonymous 911 call implicating defendant nontestimonial). Factors include the formality of the interaction and whether the statements could be objectively viewed as intended for use in a later legal proceeding. *See, e.g., Davis*, 547 U.S. at 823-24; *Crawford*, 541 U.S. at 51.

The Court specifically held in *Crawford* that "interrogations by law enforcement officers fall squarely within [the] class" of testimonial hearsay, because of their formality and the obvious implication that the officers are gathering evidence for future use. 541 U.S. at 53. The Court also held that, in contrast, "statements in furtherance of a conspiracy," for example, are "by their nature" nontestimonial. *Id*. at 56.

[3] *See also, e.g., United States v. Rodas,* 523 Fed. App'x 731, 732 (1st Cir. 2013) (rejecting *Bruton* and more general Confrontation Clause argument concerning admission of intercepted calls by co-conspirators); *Pike*, 292 Fed. App'x at 112 (rejecting Confrontation Clause argument and affirming admission under FRE 804(b)(3) of jailhouse confession implicating co-defendant); *Figueroa-Cartagena*,

**Conclusion**

The government does not oppose defendant Rafael's motion for severance. Defendant Freitas's motion for severance is legally incorrect, but likely moot.

Respectfully submitted,

Carmen M. Ortiz
United States Attorney


By:   /s/ *Andrew Lelling*
      Andrew E. Lelling
      David G. Tobin
      Assistant U.S. Attorneys

Date:   December 8, 2016




**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, on December 8, 2016.

   /s/ *Andrew Lelling*
   Andrew E. Lelling

---

612 F.3d at 85 n. 23 (noting that district court admitted statement under FRE 804(b)(3), a ruling properly analyzed by determining whether the statement was against the interest of the declarant, not against the interest of the defendant herself).