UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) ) ) v. ) ) CARLOS A. RAFAEL, ) ) Defendant. ) ) | CRIMINAL ACTION NO. 16-10124-WGY |

YOUNG, D.J.                                                      October 11, 2017

**MEMORANDUM & ORDER CONCERNING FORFEITURE**

The government here seeks forfeiture of the following fishing vessels and permits (collectively "Vessels and Permits"):

1. one fishing vessel named "Athena," bearing vessel identification number 1122803 and permit number 410604;

2. one fishing vessel named "My Way," bearing vessel identification number 603431 and permit number 330309;

3. one fishing vessel named "Hera," bearing vessel identification number 945600 and permit number 410501;

4. one fishing vessel named "Hera II," bearing vessel identification number 1113613 and permit number 410612;

5. one fishing vessel named "Poseidon," bearing vessel identification number 613018 and permit number 330379;

6. one fishing vessel named "Lady Patricia," bearing vessel identification number 1028791 and permit number 330200;

7. one fishing vessel named "Destiny," bearing vessel identification number 1031278 and permit number 330764;

8. one fishing vessel named "Olivia & Rafaela," bearing vessel identification number 553777 and permit number 330236;

9. one fishing vessel named "Hercules," bearing vessel identification number 669933 and permit number 330552;

10. one fishing vessel named "Sasha Lee," bearing vessel identification number 909149 and permit number 330795;

11. one fishing vessel named "Drake," bearing vessel identification number 618310 and permit number 410246;

12. one fishing vessel named "Bulldog," bearing vessel identification number 937040 and permit number 410471; and

13. one fishing vessel named "Southern Crusader II," bearing vessel identification number 1038917 and permit number 330904.

## I. FACTUAL FRAMEWORK[1]

On March 30, 2017, the defendant Carlos A. Rafael ("Rafael") pled guilty to twenty-three counts of false labeling and identification, in violation of the Lacey Act, 16 U.S.C. §§ 3372(d) and 3373(d).[2] Rafael owns the "Athena" outright and has

---

[1] This recitation is drawn from the pre-sentence report, the briefs and representations of the parties, and the supporting appraisals and other exhibits. The Court has not embarked on an evidentiary exploration and thus is in no position to make rigorous factual findings. Such an expenditure of time seems unnecessary since the broad outlines are not seriously disputed and the court necessarily here engages in making informed estimates.

[2] Rafael also pled guilty to one count of conspiracy in violation of 18 U.S.C. § 371, two counts of falsifying federal records, in

[2]

a one-half interest in the remainder of the fleet. Based on the current market, the estimated **gross** value of the Vessels and Permits is approximately $30,000,000 and there are approximately $2,000,000 to $3,000,000 in liens and attachments on the Vessels and Permits, reducing the value of the Vessels and Permits to approximately $27,000,000 - $28,000,000.

## II. ANALYSIS

### A. Forfeiture is Statutorily Mandated

Here, forfeiture is statutorily mandated. See 16 U.S.C. § 3374. The applicable statute provides that the following property is subject to forfeiture: "(1) [a]ll fish or wildlife or plants imported, exported, transported, sold, received, acquired, or purchased [in violation of Title 16, United States Code, Section 3372(d),] or any regulation issued pursuant thereto . . . [and] (2) **[a]ll** vessels, vehicles, aircraft, and other equipment used to aid in the importing, exporting, transporting, selling, receiving, acquiring, or purchasing of fish or wildlife or plants [involved in such offenses] if (A) the owner of such vessel, vehicle, aircraft, or equipment was at the time of the alleged illegal act a consenting party or privy thereto or in the exercise of due care should have known that

---

violation of 18 U.S.C. § 1519, one count of bulk cash smuggling, in violation of 31 U.S.C. §§ 5332(a) and 5316, and one count of tax evasion, in violation of 26 U.S.C. § 7201.

such vessel, vehicle, aircraft, or equipment would be used in a criminal violation of [the Lacey Act,] and (B) the violation involved the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants." 16 U.S.C. § 3374(a) (emphasis added). Here, Rafael admitted that he violated the Lacey Act and that the Vessels and Permits are subject to forfeiture. Specifically, in the plea agreement that he signed, he acknowledged the following:

> Defendant admits that [the Vessels and Permits] are subject to forfeiture on the grounds that, as to forfeiture pursuant to conviction on Counts 2-24, assets (a) through (m) constitute (1) all fish or wildlife or plants imported, exported, transported, sold, received, acquired, or purchased in violation of 16 U.S.C. § 3372(d), or any regulation issued pursuant thereto; and/or (2) all vessels, vehicles, aircraft, and other equipment used to aid in the importing, exporting, transporting, selling, receiving, acquiring, or purchasing of fish or wildlife or plants involved in such offenses if (A) the owner of such vessel, vehicle, aircraft, or equipment was at the time of the alleged illegal act a consenting party or privy thereto or in the exercise of due care should have known that such vessel, vehicle, aircraft, or equipment would be used in a criminal violation of the Lacey Act, and (B) the violation involved the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants.

ECF No. 102 at 8.

The relevant statute mandates forfeiture. Specifically, 28 U.S.C. § 2461(c) provides that, "[i]f the defendant is convicted of the offense giving rise to the forfeiture, the court **shall order** the forfeiture of the property as part of the sentence in

the criminal case . . . ." (emphasis added). "The mandatory nature of [the phrase 'shall order' in 28 U.S.C. § 2461(c)] is clear: When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits." United States v. Newman, 659 F.3d 1235, 1240 (9th Cir. 2011). The United States Supreme Court, considering similar language in the drug forfeiture statute, noted: "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory." United States v. Monsanto, 491 U.S. 600, 607 (1989) (considering 21 U.S.C. § 853, which provides that "[a]ny person convicted of a violation of [the Controlled Substances Act] punishable by imprisonment for more than one year shall forfeit to the United States [proceeds and facilitating property]"); see also United States v. Blackman, 746 F.3d 137, 143 (4th Cir. 2014) (Section 2461(c) makes criminal forfeiture mandatory in all cases; "'The word "shall" does not convey discretion' . . . . The plain text of the statute thus indicates that forfeiture is not a discretionary element of sentencing. . . ."). Because Rafael violated the Lacey Act, and conspired to violate the Act, this Court must order forfeiture to the extent permitted by the Constitution.

## B. The "Excessive Fines" Clause

Whatever the statutory mandate, Rafael contends that the forfeiture the government seeks here runs afoul of the United States Constitution.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; United States v. Ortiz-Cintron, 461 F.3d 78, 81-82 (1st Cir. 2006). It is Rafael's burden to show unconstitutionality. See United States v. Jose, 499 F.3d 105, 108 (1st Cir. 2007). Criminal forfeiture as a component of the sentence imposed on Rafael is excessive only if "it is grossly disproportional to the gravity of a defendant's offense." United States v. Bajakajian, 524 U.S. 321, 334 (1998); see United States v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005). To determine whether a proposed forfeiture violates the Eighth Amendment, courts consider these factors: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." Haldeman, 402 F.3d at 223. I must also consider whether the forfeiture amount would "deprive the defendant of his or her livelihood." United States v. Levesque, 546 F.3d 78, 83 (1st Cir. 2008). While "gross disproportionality" is the key determinant here, the Court

briefly weighs the four supporting factors, albeit in a somewhat different order.

### 1. Rafael Falls Into the Class of Persons to Which the Criminal Statute Was Principally Directed.

The Lacey Act "provide[s] for federal criminal penalties premised upon the violation of various state, tribal, foreign and federal fish and wildlife protection laws." United States v. Reeves, 891 F. Supp. 2d 690, 691 (D.N.J. 2012); see generally United States v. Bernal, 90 F.3d 465, 467 (11th Cir. 1996) (per curiam) ("The purpose of the Lacey Act is to protect 'those species of fish and wildlife whose continued existence is presently threatened' by 'gradually drying up the international market for endangered species,' thus 'reducing the poaching of any such species in the country where it is found.'" (quoting S. Rep. No. 91-526, reprinted in 1969 U.S.C.C.A.N. 1413, 1415-16)). Its focus is the "prohibition of interstate and international trafficking in protected wildlife," not just endangered wildlife. Robert S. Anderson, The Lacey Act: America's Premier Weapon in the Fight against Unlawful Wildlife Trafficking, 16 Pub. Land L. Rev. 27, 29 (1995). Rafael here mislabeled fish for the sole purpose of catching more fish subject to restrictive quotas without having to obtain or pay for those additional quotas. These quotas were implemented to protect a declining Atlantic fish stock, a critical natural resource for New England. The

quotas are designed to conserve certain types of more depleted fish. See, e.g., Carrie A. Tipton, Protecting Tomorrow's Harvest: Developing a National System of Individual Transferable Quotas to Conserve Ocean Resources, 14 Va. Envtl. L.J. 381 (1995). Rafael's violations of the Lacey Act impaired regulators' ability to determine the appropriate quota to set. His offense conduct - misreporting his catch - is exactly the type of conduct the Lacey Act was designed to prevent.

### 2. The Requested Forfeiture Would Not Deprive Rafael of His Livelihood.

Here the government is not seeking a forfeiture money judgment against Rafael relating to his Lacey Act violations. Forfeiture money judgments are generally sought when assets that are directly forfeitable can no longer be found or have been dissipated, transferred, or sold, and the amount sought to be forfeited equals the proceeds the defendant obtained as a result of his or her offense conduct. Here, the government has located assets that are directly forfeitable - the Vessels and Permits. The government does not seek to impose a forfeiture money judgment upon assets Rafael does not have and would have to pay into the future. Moreover, Rafael has at least twenty other vessels that are part of his fleet and those other twenty vessels also have lucrative permits attached to them.

### 3. The Harm Caused by the Defendant was Substantial.

Rafael's corruption was a year in and year out way of doing business that impacted the fisheries and other fishery business. Compare Jose, 499 F.3d at 112-13, with Bajakajian, 524 U.S. at 339 ("Failure to report [Bajakajian's] currency affected only one party, the Government, and in a relatively minor way . . . . Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country.") Rafael owns and operates one of the largest ground fish fleets in the United States and, for decades, he had continuously ignored and circumvented the regulatory restrictions on commercial fishing applicable to all fishermen. Here, Rafael committed twenty-three Lacey Act violations, encompassing 782,812 pounds of fish (over 364 tons), and his actions impacted the entire New England fishery. Essentially, his overall strategy was to use his financial leverage, which he generated through his illegal behavior, to preserve his business while other fishing businesses were collapsing around him. Rafael's systemic fraud allowed him to avoid buying fishing quota on the secondary market. He perpetrated one of the largest misreporting schemes identified by the National Oceanic and Atmospheric Administration ("NOAA"). While federal quotas for ground fish dropped over the years, Rafael's illegal catch grew, which ultimately gave him a competitive advantage over other hard-working, honest fishermen.

Just as in United States v. Heldeman, 402 F.3d 220 (1st Cir. 2005), Rafael's conduct was calculated, repeated, and done for his own benefit. See id. at 223.

### 4. Other Penalties Authorized by Congress (or the Sentencing Commission)

Here, after carefully calculating the sentencing guidelines as required by law, the Court derived a guideline range of not less than 51 nor more than 63 months imprisonment, a fine range of $20,000-$200,000, restitution of $108,929,[3] supervised release from one to three years, and a mandatory special assessment of $2,800 ($100 on each of the 28 counts of conviction).

Following the principles set forth in 18 U.S.C. § 3553(a), with specific emphasis on the need for specific and general deterrence in light of Rafael's extensive flouting of the fishery reporting regulations and the harm it caused, this Court sentenced him to 46 months in custody, three years of supervised release (with a special condition barring him from the fishing industry), a special assessment of $2,800, and a fine of $200,000, the maximum guideline fine provided for Rafael's adjusted offense level. Guidelines § 5E1.2(c)(3) Fine Table (Nov. 1, 2016).

### C. Gross Disproportionality

---

[3] The amount of restitution represents the government's loss from Rafael's tax evasion. Rafael paid the restitution in full prior to sentencing.

Against the background just limned, the Court proceeds to estimate the constitutionally proportional forfeiture (keeping in mind that Rafael's interest in **all** the Vessels and Permits is statutorily required to be forfeited, Section A supra). Accordingly, this Court – in order to carry out the congressional mandate – must decree forfeiture to the full extent permitted by the Eighth Amendment.

If proportionality is key – in proportion to what? Here the guidepost is relatively clear; the forfeiture must not be grossly disproportionate to the maximum fine under the sentencing guidelines. In United States v. Beras, 183 F.3d 22, 29 n.5 (1st Cir. 1999), the First Circuit noted that Bajakajian "suggests that the maximum penalties provided under the Guidelines should be given greater weight than the [statutory maximum] because the Guidelines take into consideration the culpability of the individual defendant."[4] See United States v.

---

[4] But see United States v. $134,750 in United States Currency, 535 Fed. Appx. 232, 240-42 (4th Cir. 2013)("Thus, '[t]here is a strong presumption of constitutionality where the value of a forfeiture falls within the fine range prescribed by Congress or the Guidelines' . . . . That the forfeiture amount falls within the fine range authorized by Congress raises a presumption of constitutionality."); United States v. Malewicka, 664 F.3d 1099, 1106-08 (7th Cir. 2011) (emphasizing that legislative judgments as to the maximum penalty should be respected in the Eighth Amendment analysis and holding that given the maximum statutory fine, forfeiture of 100% of structured funds is not excessive); United States v. $79,650 Seized from Bank of Am., 650 F.3d 381, 385, 388(4th Cir. 2011) (the court must look to the maximum

Castello, 611 F.3d 116, 123 (2d Cir. 2010) (Jacobs, C.J.) "[T]he relevant metric is the top of the Guidelines for the fine and for imprisonment."). Then, in United States v. Jose, 499 F.3d 105 (1st Cir. 2007), the First Circuit upheld a forfeiture of $114,948 for bulk cash smuggling even though the trial judge had imposed no fine at all. Id. at 107, 112-113. The First Circuit set out the relevant guideposts as follows:

> Jose, like Bajakajian, faced a statutory maximum of 5 years' imprisonment. See 31 U.S.C. §§ 5322(a), 5332(b)(1); Bajakajian, 524 U.S. at 339 n. 14, 118 S.Ct. 2028. Jose, however, faced a tougher Guidelines sentence than Bajakajian. The maximum Guidelines sentence that could have been imposed on Jose was 18 months' imprisonment and a fine of $30,000, whereas the maximum Guidelines sentence that could have been imposed on Bajakajian was 6 months' imprisonment and a fine of only $5,000. Thus, the forfeiture at issue [in Jose] is less than 4 times the maximum fine allowable under the Guidelines, whereas the forfeiture in Bajakajian exceeded the maximum fine under the then-mandatory Guidelines by a factor of more than 70.

Id. at 112.

---

statutory fine when conducting the Eighth Amendment analysis); United States v. Deskins, No. 1:13CR00025, 2014 WL 670910, at *3 (W.D. Va. Feb. 20, 2014) ("The forfeiture amount should be compared to the maximum statutory fine rather than the maximum fine suggested under the Sentencing Guidelines."); United States v. Young, No. 2:11cr304, 2014 WL 494576, at *4 -5 (W.D. Pa. Feb. 6, 2014) ("The amount the government seeks to forfeit compared with the maximum fine permitted under the statutes therefore does not violate the Eighth Amendment.").

In this case, having calculated an adjusted offense level of 27 for Rafael, this Court imposed the maximum guidelines fine - $200,000. Guidelines § 5E1.2(c)(3) Fine Table (Nov. 1, 2016).

The government erroneously seeks to multiply the maximum fine by each of twenty-three counts of conviction for violations of the Lacy Act. That's not how the guidelines work. The adjusted offense level of 24 is derived in part from the market value of the **aggregate** weight of the fish fraudulently taken. The fine applicable to any particular count would have been considerably lower.

While Bajakajian makes clear that a forfeiture of 70 times the maximum fine is grossly disproportionate, nothing in Jose suggests that 4 times the maximum guidelines fine is the outer limit of proportionality. Compare Bajakajian, 524 U.S. at 338-39 (holding forfeiture of $357,144 violates the Excessive Fines Clause when the fine imposed was only $5,000), with Jose, 499 F.3d at 112 ("[T]he forfeiture at issue here is less than 4 times the maximum fine allowable under the Guidelines, whereas the forfeiture in Bajakajian exceeded the maximum fine under the then-mandatory Guidelines by a factor of more than 70. This undermines Jose's argument that the forfeiture order is grossly out of proportion to the gravity of his offense."). Indeed, Jose did not present that question. This case does.

After careful consideration, this Court rules that forfeiture of assets valued up to approximately ten times the maximum guidelines fine, and probably a bit more,[5] is within the limit of constitutional proportionality in the circumstances of this case. See United States v. Mackby, 339 F.3d 1013, 1016-19 (9th Cir. 2003) (civil penalty ten times the maximum guidelines not unconstitutional); United States v. Finazzo, No. 10-CR-457(RRM)(RML), 2014 WL 3818628, at *35 (E.D.N.Y. Aug. 1, 2014) rev'd on other grounds by United States v. Finazzo, 850 F.3d 94, 112 (2d Cir. 2017) (forfeiture ten times the maximum fine under the guidelines is not excessive where other indicia established the seriousness of the offense). See also Castello, 611 F.3d at 123 (forfeiture of more than forty times the maximum fine under the guidelines constitutional); United States v. Riedl, 82 Fed. Appx. 538, 540 (9th Cir. 2003) (forfeiture twelve times the prescribed guidelines fine not unconstitutional).

---

[5] This equivocation is appropriate because the guidelines are no longer mandatory, United States v. Booker, 543 U.S. 220, 245 (2005), as they were when the Supreme Court decided Bajakajian, and this Court could have imposed a fine of up to $250,000 - the maximum guidelines fine available to sanction an offender had Rafael not pled guilty and spared the government the burden and expense of a trial. I could not have imposed a heavier fine, however. To do so would be an unconstitutional exercise of unfettered discretion. See United States v. Kandirakis, 441 F. Supp. 2d 282 (D. Mass. 2006); United States v. Gurley, 860 F. Supp. 2d 95, 107 (D. Mass. 2012).

This is not some arbitrary choice. It accommodates - as far as this Court reasonably can - the unequivocal congressional mandate that forfeiture for Lacey Act and bulk cash smuggling offenses ought be complete. Yet by adhering to our present quasi-determinate form of sentencing Congress has at the same time limited its largely unfettered legislative power in the premises by delegating to the Sentencing Commission the power to set fine ranges and, by extension, the permissible scope of constitutional forfeiture. Moreover, a forfeiture sanction of $2,000,000+ in assets accords well with Rafael's suggested $2,800,000 cash forfeiture. Def. Opp'n Forfeiture ECF No. 204. Rafael, of course, would agree to this cash forfeiture in a last ditch effort to save his fleet entire and, apparently, sell it as a whole. The government will not agree - it seeks the forfeiture of actual Vessels and Permits.

### III. CONCLUSION

With these principles in mind, the Court - accepting the appraisals and listing of permits found in Rafael's Opposition to Forfeiture, Exhibit 1 - seeks to maximize, within constitutional limits, the number of vessels and permits to be forfeited. I have stayed away from the "Athena" and the "Hera II" because they have scalloping permits and scalloping is not involved in this wrong doing.

Accordingly, Carlos Rafael shall forfeit all right, title and interest he may have in the "Bull Dog" ($661,350[6] - 8 permits), the "Olivia & Rafaela" ($458,550 - 11 permits), the "Lady Patricia" ($338,800 - 4 permits), and the "Southern Crusader II" ($800,150 - 11 permits), i.e. four fish boats with a total appraised value for Rafael's interest of $2,258,850 and 34 permits.

**SO ORDERED.**

WILLIAM G. YOUNG
DISTRICT JUDGE

---

[6] Appraised value of Rafael's interest.